CALOGERO, Justice.*
The question in this case is whether a Hospital Service District Board of Commissioners, governed by statutes which provide that the hospital director “shall serve at the pleasure of the commission”, may discharge the hospital director without official warning notwithstanding that its bylaws require such official warning. If we find that the commission may not so discharge the director, then we must further consider whether it was proper, in this case, for the trial court to determine, on a motion for summary judgment, that the director was riot “officially” warned as required by the by-laws.
Plaintiff, John Keith Lamm, was hired by the Vermilion Hospital Service District Board of Commissioners in October of 1975 to serve as the Administrator/Director of Abrom Kaplan Memorial Hospital. On January 23, 1978, the Board met and voted three to two to dismiss Lamm. The item relative to the firing was not on the formal agenda, no public hearing was held, and Lamm was not afforded an opportunity to address the Board. On February 2, 1978, the Vermilion Parish Police Jury, which appoints the members of the Board, called a public hearing relative to the dismissal for February 6, 1978 and ordered the Board to give Lamm a list of the charges against him by February 3, 1978 and to open all the hospital books and records to him. The notice of the hearing and the list of charges were both timely received by Lamm. At the public hearing on February 6, 1978 the Board first voted to rescind the motion made on January 23, 1978 discharging Lamm, and to allow him his full pay to February 6, 1978. The twenty-one charges were then read and Lamm responded. The Board deliberated and then voted three to two in favor of dismissal.
Plaintiff filed the instant suit seeking reinstatement and back salary from the date of the hearing contending that he was not discharged in accordance with the hospital by-laws. The defendant Board of Commissioners answered the suit. It contended that Lamm was given several warnings about his deficiencies.. Plaintiff then filed a motion for summary judgment with supporting affidavits. The trial court held that Article IX, Section 4 of the hospital by-laws[1] requires that an “official warning” and a reasonable opportunity to correct deficiencies must be given the administrator before he can be properly discharged. The court found that this procedure had not been followed and granted the motion for summary judgment.
*921 Defendant appealed and the Court of Appeal affirmed, reasoning also that there had been no “official” warning and no reasonable opportunity after such a warning for the director to correct his deficiencies. The Court ordered that the plaintiff be reinstated and that he be paid his salary, with interest, from February 6, 1978.
We granted writs upon application of the Board. Lamm v. Board of Commissioners, 374 So.2d 662 (La.1979).
We have serious misgivings concerning the summary judgment grant in this case. It seems to us, upon a review of the record, that this case is not an appropriate one for summary judgment disposition. The Court of Appeal felt that the term “official warning”, in the hospital by-laws, required some formal action by the Board (presumably the court was contemplating here a written notice authorized by resolution of the Board of Commissioners or something of that sort). We are not at all sure that the warnings and directives issued the administrator by Board members particularly at official Board meetings (as purportedly supported by the minutes of the Board meetings) would not suffice as official warnings as contemplated by these by-laws.[2]
Nonetheless, we need not decide this case on that basis but rather by resolving favorably to relator the question posed in the first sentence of this opinion.
Creation of the Vermilion Hospital Service District No. 1 was, and is, authorized by statute. R.S. 46:1051.[3] Upon creation of a hospital service district, R.S. 46:1053[4] requires that a Board of Commissioners be appointed by the parish police jury. The purpose of the Board is to represent the public interest in providing hospital and medical care in the district by advising the police jury and the hospital director of problems concerning the hospital and generally to oversee the running of the hospital by the director whom it appoints. R.S. 46:1055.[5] The legislature, in enumerating *922 the requisites for the administrator, has provided that “he shall serve at the pleasure of the commission”. R.S. 46:1056.[6]
The Board of Commissioners of the hospital service district is governed by the statute and under R.S. 46:1055(3) has the authority “to make, alter, amend and promulgate rules and regulations governing the hospital”. It thus has the right, as do private corporations, to adopt by-laws for its internal operation.
In this case relator Board chose to adopt by-laws, and did so, including one (Article IX) which related to the administrator, his selection and employment, his delegated authority, his responsibilities, his representative capacity, and a procedure for the termination of his duties. In this latter regard, Article IX, Section 4 of the by-laws recites that the Board, when it believes that the administrator’s services are not satisfactory, “shall give him official warning and a reasonable opportunity to correct the indicated deficiency” and “in the event the governing Board believes it has cause to terminate the services of the Administrator, it should give him an opportunity for a hearing . . . .”
Conceding for present purposes that the Board did not give plaintiff “official” warning and an opportunity to amend his purportedly errant ways, the issue then becomes whether the Board must comply with its own by-laws. The answer to that depends upon the context in which the problem arises.
In Hill v. American Co-operative, 195 La. 590, 197 So. 241 (1940), the Board of Directors of a private corporation elected to hire a comptroller for the year, notwithstanding that its by-laws required that the comptroller should serve at the Board’s pleasure. In the corporation’s later attempt to disregard the contract, contending that hiring the comptroller in a manner contrary to the by-laws, for a one year term, was ultra vires and therefore the one year contract was invalid, this Court held that the actions by the Board of Directors which were inconsistent with the by-laws had the effect of waiving those by-laws since it was the Board itself which had the authority to amend them. The Court, citing Fletcher on Corporations, held:
“When the Board of Directors has power to adopt by-laws, it has power to waive those adopted, unless the right of waiver is authoritatively limited, as by the statute, charter, or certificate of incorporation . . ., but when the power to make by-laws is vestsd in the stockholders or members, and they have made bylaws for the protection of the corporation, they cannot be waived by the directors or other officers of the corporation.”
Thus the contract in that case was not ultra vires and was valid.
Likewise, in the present case, the Board of Commissioners had the authority and power to amend its by-laws simply by majority vote.
Admittedly, the court’s sanctioning of a corporation’s disregard of its by-laws in Hill was contrary to the corporation’s legal position in the litigation, while here sanctioning the Board’s disregard of its by-laws is favorable to the Board. However, the same principle applies, i. e., where the Board has a right to amend by-laws governing its internal operation it may waive or disregard them by inconsistent action, provided the action is adopted by the same vote required for adoption of the by-laws. This is not to say that by-laws upon which another has relied or might reasonably rely *923 can be changed informally and without notice to that other’s prejudice. Therefore it is appropriate that we examine the particular circumstances surrounding this plaintiff, the Board and plaintiff’s employment by the Board.
In the record before us, there is no showing that Lamm had a written contract incorporating provisions for the termination procedure set out in the by-laws. Nor is there a showing that plaintiff relied upon the existence of the by-laws (seemingly promising an official warning and second chance) when he was hired, or while he was employed.
Furthermore, the director was given a hearing and a chance to present his case. Rather than conceding the Board’s right to take issue with his job performance and his own willingness, given additional opportunity, to correct such deficiencies as may have legitimately been set forth in the formal charges, relator chose to berate certain Board members for their own deficiencies, apparently relying upon a belief, later proven unwise, that he would prevail in the dispute, either with the majority of the Board or a majority of the Board’s appointing authority, the police jury. (The Board voted to discharge him by vote of three to two and the police jury refused to override the action of the Board by a vote of nine to four.)
On the record as it presently appears, there is no basis for concluding that the director relied to his detriment on the termination procedures set forth in the bylaws, and in the absence thereof there is no legal reason for concluding that the Board can not by the same majority vote by which the by-laws were adopted take action contrary to its by-laws.

Decree

Accordingly, the judgments of the trial court and the Court of Appeal granting motion for summary judgment in favor of plaintiff are reversed and the case is remanded to the trial court for further proceedings not inconsistent with -this opinion.
REVERSED; REMANDED TO THE DISTRICT COURT.

 Honorable Jesse N. Stone, Jr. served as Justice Ad Hoc in the vacancy created by the resignation of Tate, J.

. Article IX, Section 4 of the Abrom Kaplan Memorial Hospital by-laws provides as follows:
“When the Board of Commissioners believes the services of the Administrator are not satisfactory, it shall give him official warning and a reasonable opportunity to correct the indicated deficiency. In the event the governing Board believes it has cause to terminate the services of the Administrator, it should give him an opportunity for a hearing with assistance as he, the Administrator, deems necessary. On termination of the Administrator’s services, it seems advisable by the Administrator in the interest of the public to make a statement, due regard shall be given to the interests of the hospital and the Administrator.”

. The defendant Board contends that when Lamm was originally hired he was told that the preceding director was discharged because he had failed to have the emergency generator connected promptly, yet Lamm took two full years, until the very month he was fired, to get that done. Defendant, further contends, through an affidavit of the Chairman of the Board, that Lamm was continuously warned about his shortcomings by members of the Board. It was also asserted by defendant that several warnings were given to Lamm by Board members at their monthly Board meetings. It is alleged that there were several other areas in which Lamm was not performing as he should and that he was similarly warned about them. Finally, t'he Board contends that at the August, 1977 meeting it told Lamm in no uncertain terms that unless his administration was improved drastically he would be terminated.

. R.S. 46:1051 provides in pertinent part:
“The police juries of parishes are authorized and empowered, upon their own initiative, to form and create one or more hospital service districts within the respective parishes . . ."

. R.S. 46:1053(A) provides as follows:
“Any hospital service district formed or created under the provisions of this Chapter shall be governed by a board of five commissioners, hereafter referred to as commission, who shall be qualified voters and residents of the district. The commission shall be appointed by the police jury of the parish. Two of the first commissioners so appointed shall serve for two years, two for four years and one for six years.”

. R.S. 46:1055 provides as follows:
“In addition to the duties defined elsewhere in this chapter, the commission shall have the duty and authority:
(1) To represent the public interest in providing hospital and medical care in the district.
(2) To advise the police jury and the hospital director on problems concerning the operation of the hospital and other facilities.
(3) To make, alter, amend and promulgate rules and regulations governing the conduct of the hospital.
(4) To conduct hearings and pass upon complaints by or against any officer or employee of the district.
(5) To review and modify, or set aside any action of the officers or employees of the district which the commission may determine to be desirable or necessary in the public interest.
(6) To appoint, with the approval of the medical staff, a director of the hospital and to perform such other duties as may now or hereafter be required by law.
(7) To appoint the necessary standing and special committees which may be necessary to carry out the purposes of this chapter.
*922 (8) To establish rates of pay for the use of facilities provided by the district.
(9) To enter into lease agreements with recognized and duly constituted non-profit associations which are primarily engaged in the operation of hospitals.”

. R.S. 46:1056 provides as follows:
“The board of commissioners shall appoint, with the approval of the medical staff, a hospital director, hereafter referred to as ‘director,’ who has had experience in the field of hospital administration and is familiar with the principles and methods of the hospital and institutional care. He shall be a full time employee of the district and shall receive a salary fixed by the commission. He shall serve at the pleasure of the commission.”